DALLAS JOINT STOCK LAND BANK OF DALLAS v. UPTON et al.

No. 1637.

Court of Civil Appeals of Texas. Eastland.

March 5, 1937.

Renfro & McCombs, of Dallas, for appellant.

R. E. Eubank, of Paris, for appellees.

GRISSOM, Justice.

Plaintiffs sued the defendant bank for a commission alleged to have been earned by the firm of Upton & Roche as real estate agents in selling land belonging to the bank to J. I. Rhodes.

Plaintiffs' allegations with reference to the contract between Upton & Roche and the bank were in substance that Upton & Roche "were engaged in the business of selling real estate in Lamar" and other

counties, "that as such real estate agents they were to * * * receive * * * the customary commissions for sales of real estate in such counties * * *"; that the bank "listed" the farm sold to Rhodes with Upton & Roche "for sale."

Plaintiffs' proof of the contract between Upton & Roche and the bank, as shown by the testimony of Mr. Roche, was as follows: "I went to Dallas to see if we could get a price on this Penwell farm. * * * We asked Mr. Ferguson for a price but he told us to get an offer and submit it to the office and if they accepted the offer they would give us a five per cent commission on the amount accepted, that is five per cent of the amount accepted. If they accepted the offer and closed the deal they would give us a five per cent commission. Mr. Ferguson told me he would not give a price on the land, but would pay me five per cent of the amount of any offer submitted which was accepted."

Under the circumstances, we do not know what plaintiffs intended by the allegations that the bank "listed" the farm with Upton & Roche "for sale." They alleged that they were entitled to receive the usual commission of 5 per cent. Mr. Roche's testimony showed an express contract to pay a commission of 5 per cent. upon the amount of the sale price. They proved, as we understand the testimony, that the bank refused to fix a price on the land, but told Upton & Roche to get an offer and submit it to the bank; that, if the bank accepted the offer made through them, it would pay them a commission of 5 per cent.

If the allegations and proof as to the contract between the bank and Upton & Roche, by stretch of the imagination can be held to correspond, then, in order for the plaintiffs to recover, they must, at least, have a finding, or establish by undisputed testimony, that the offer made through Upton & Roche was accepted. (In this connection, it must be remembered that plaintiffs did not allege that the bank was in collusion with the agent who actually got the bank and the purchaser to sign a contract, and later to close the deal for the sale of the farm.) Upton & Roche knew, according to the testimony, that there were other agents trying to sell the land, or trying to obtain offers for this land to submit to the bank for its consideration. On June 5, 1931, Upton & Roche first submitted an offer of $10,000 for the farm, and on the same day Mr. Roche asked Mr. Rhodes to see Mr. Dorough, telling him that Dorough sold land for the bank and "might have a better price on this piece of land than I had." On the 16th of June Upton & Roche wrote the bank, trying to get it to set a price of $14,000 on the farm, and said to the bank that "your Mr. Altman" and "your agent at Bonham" are offering to sell the farm for $14,000.

The special issues submitted and the answer of the jury thereto are as follows:

"Did Upton & Roche, or either of them. first show to J. I. Rhodes the land which he later bought from the defendant? Answer: Yes.

"Did J. I. Rhodes make an offer of $10,000 for the land he later purchased? Answer: Yes.

"Did the defendant afterwards sell the land to J. I. Rhodes for $10,000? Answer: Yes.

"What do you find was a reasonable commission for the sale? Answer: Five Hundred Dollars."

We do not think a disputed issue was submitted to the jury, unless it was No. 4. The first issue is evidentiary only.

If plaintiffs' pleadings could be construed to be in accord with the testimony of Roche as to the contract between the bank and Upton & Roche, then certainly plaintiffs could not recover without a finding (1) that Upton & Roche submitted an offer and (2) that said offer was accepted. It is true that Roche offered $10,000 for the land and the defendant bank sold it later to Rhodes for $10,000, but this general statement could be made of the transaction as handled through Dorough without reference to the action of Upton & Roche.

Under this situation the verdict is insufficient to support the judgment.

The plaintiffs' allegations with reference to the performance by Upton & Roche of the contract alleged (if it be conceded that a contract between Upton & Roche and the bank was alleged) were in substance: That Upton & Roche had considerable correspondence with the bank with reference to the sale of the farm, and the price to be agreed upon; that, on June 5, 1931, they submitted an offer of $10,000, which was rejected by the bank; that, after other

correspondence, the bank suggested, on June 19th, that Upton & Roche find a buyer who would submit an offer of $14,000 for the bank's consideration; that on June 19th Upton & Roche reminded the bank of the previous offer of $10,000; that the bank was advised of the name of their prospective buyer. Plaintiffs further alleged "that said offer and bid so made by J. I. Rhodes of $10,000 was ultimately accepted by the defendant and that the defendant did on the 2nd day of December, 1931, thereafter make, execute and deliver a warranty deed to said tract of land for the sum of $10,000," the $10,000 being payable $1,000 in cash and a note for $9,000, bearing interest at the rate of 6 per cent. per annum, "payable in 20 amortization installments." Plaintiffs alleged that they were the first and only agents to show the land to Rhodes; that Rhodes "was ready, willing and able to purchase said property"; that thereafter Rhodes did on December 2nd "purchase through other agencies the said property" upon the terms heretofore stated; that the bank "accepted a price which had been offered by the plaintiffs herein" and delivered a deed to the vendees, well knowing that the plaintiffs "had procured and had been the procuring cause of the offer so made by * * * Rhodes." Plaintiffs further alleged that by reason of the foregoing "and by reason of their procuring and submitting to the defendant the offer herein stated and the acceptance of same by the defendant" that the bank became liable under its contract with Upton & Roche "to procure purchasers for said property" to pay the usual commission of 5 per cent.

On July 3, 1931, the bank signed a contract with Rhodes to sell him the land. Dorough procured the execution of this contract and was paid the agent's commission. Because of a question about who was entitled to the agent's commission, the bank withheld delivery of the deed until in December, 1931, at which time the purchaser, Rhodes, made an affidavit that on July 3d and then it was his understanding that Dorough "was the agent in this transaction, and induced and persuaded him to buy, and was to receive all commissions from the owner." He further swore that he had so represented the facts to an agent of the bank, and that he had also represented to such agent that Dorough was "my sole representative in the transaction; and I do hereby declare such to be true, and so far as I know there are no other agent or agents concerned."

The offer through Upton & Roche on June 5th of $10,000 for the farm (which was promptly rejected by the bank), unqualified as it was, must be considered as an offer of $10,000 cash for the farm. Had the bank replied "the offer is accepted," certainly none of the parties would have had the right to add other conditions to the terms of the offer and acceptance, for instance, to insist that payment was to be partly cash and partly on credit. If we are correct in our construction of the offer, then not only was the offer made through Upton & Roche promptly rejected, but such an offer through any one else was never accepted. As long as the bank acted fairly in its dealings with the many agents who were attempting to sell or obtain offers for the farm to submit to the bank, it had the right to accept any offer made by any agent at any time that it desired to do so. If the pleadings so allege, and we think they do not, there was no finding that the bank acted unfairly between the agents. Had the offer through Upton & Roche of $10,000 cash on June 5, 1931, been the same offer as that made through Dorough and accepted on July 3d we are not able to say that the bank, provided it acted in good faith and fairly between the agents, could not have accepted the latter under the testimony of Mr. Roche, without being bound to pay an agent's commission to Upton & Roche on their rejected offer. The situation may have between June 5th and July 3d materially changed. A seller may, in good faith, reject an offer for his property, and a month later conclude that it is then advisable to accept the amount previously refused.

The bank was organized for the purpose of loaning money on land. It may have considered an offer of $10,000, part cash and part credit, where eventually the bank might receive a large amount of money as interest, as a better offer than the cash offer made through Upton & Roche. It certainly cannot be said that, as a matter of law, the rejected cash offer made through Upton & Roche and the accepted cash and credit offer made through Dorough is the same offer.

There was no pleading to support the award of interest prior to the judgment.

The judgment is reversed and the cause remanded.